**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARK EDWARD LYMAN,**

                                 **Plaintiff,**

     **vs.**                                        **1:12-CV-530**
                                                  **(MAD/RFT)**

**NYS OASAS; ARLENE GONZALEZ-SANCHEZ;**
**MICHAEL LAWLER; and LAURIE FELTER,**

                                **Defendants.**
_____

**APPEARANCES:**                       **OF COUNSEL:**

**MARK EDWARD LYMAN**
P.O. Box 3924
Albany, New York 12203
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**         **CHARLES J. QUACKENBUSH, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 23, 2012, Plaintiff commenced this action alleging that Defendants violated his rights under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. _See_ Dkt. No. 1. On May 22, 2012, Plaintiff amended his complaint. _See_ Dkt. No. 6.

Currently before the Court is Defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. _See_ Dkt. No. 9.

## II. BACKGROUND

Plaintiff is an employee of the New York State Office of Alcoholism Substance Abuse Services ("OASAS"). *See* Dkt. No. 6 at ¶ 8. Plaintiff works in the Albany Capital Bureau with the Facilities Evaluation and Inspection Unit ("FEIU"). *See id.* at ¶¶ 8, 22. Defendants in this action are OASAS, Arlene Gonzalez-Sanchez (OASAS' Commissioner), Michael Lawler (OASAS' Associate Commissioner), and Laurie Felter (OASAS' Albany Bureau Director). *See id.* at ¶ 3.

According to the amended complaint, in October of 2010, Plaintiff applied, but was not selected for, a promotion to the position of Facility Planner 2. *See id.* at ¶ 8. Plaintiff claims that, although agency policy is to hire from within for such positions, Defendants sought candidates from outside the agency, as they had for the past three previous openings. *See id.* Plaintiff claims that all three of the previous successful applicants had no relevant prior experience and it fell to Plaintiff to provide them with "knowledge and minimal field experience for their position." *See id.* Plaintiff claims that, despite his qualifications for the position, Defendants denied him the promotion because "of his religion and his creed as well as for public statements against the Roman Catholic Church and their handling of sexual abuse charges involving children and survivors." *See id.* at ¶¶ 10, 30.[1] Thereafter, in January of 2011, Plaintiff filed an internal discrimination complaint alleging that he had "been repeatedly and consistently prevented from

---

[1] Plaintiff alleges that for the past eight years, he has been the "Upstate Coordinator for the Survivors Network of those Abused by Priests or SNAP. *See* Dkt. No. 6 at ¶ 34. Although not always clear, his affiliation with this group and his advocacy against certain policies of the Catholic Church appear to be the basis for most of his claims.

obtaining better wages even though his duties and responsibilities are commensurate with the higher pay grade." *See id.* at ¶ 11.

On March 17, 2011, Plaintiff asserts that he was directed, by an unidentified supervisor, to submit travel itineraries ten days in advance and for the subsequent two weeks, so that they could be reviewed and approved prior to travel for future inspections. *See id.* at ¶ 12. Plaintiff claims that Defendant Felter "disapproved many of [the] itineraries causing [P]laintiff to make numerous changes to them." *See id.*

Thereafter, on April 6, 2011, Plaintiff claims that he "was subjected to harassment and public ridicule by . . . [Defendant] Felter in front of his co-workers." *See id.* at ¶ 14. Plaintiff alleges that despite his reporting of this "pattern and repeated practice of abusive supervision and retaliation" to Defendant OASAS' Affirmative Action Manager, no action was taken. *See id.*

On April 25, 2011, Plaintiff alleges that he was instructed by an unnamed supervisor to call the office during field visits in order to keep his office apprised of his whereabouts. *See id.* at ¶ 15. Plaintiff discussed this with his immediately supervisor because he felt that it was a violation of his union contract regarding timekeeping requirements and subsequently filed a contract grievance. *See id.* Plaintiff claims that this policy was "directed at and designed to punish" him. *See id.* at ¶ 16.

In May of 2011, Plaintiff learned that his estranged wife was maintaining social contact with Defendant Felter. *See id.* at ¶ 19. Plaintiff claims that Defendant Felter became involved with his marital situation and provided his wife with "fabricated and retaliatory" information which was "improper and served as personal animus and created a hostile work environment." *See id.*

On June 21, 2011, Plaintiff alleges that Defendant Felter rearranged his workload so that he would not longer be required to travel for work. *See id.* at ¶ 20. Plaintiff claims that this was done "for punitive purposes," and not for the proffered reason of reducing travel expenses. *See id.* at ¶¶ 20-21. Then, on June 28, 2011, Plaintiff was informed by Human Resources that he had been targeted for layoff on July 22, 2011. *See id.* at ¶ 22. Plaintiff claims that he was the only FEIU employee targeted for layoff and that this decision was in retaliation for the discrimination complaint he filed against Defendant OASAS. *See id.* Although Plaintiff was not let go as expected, he claims that on July 25, 2011, Defendant Felter directed a manager to issue Plaintiff a memorandum to be placed in his file regarding an issue with Plaintiff's leave accruals. *See id.* at ¶ 23.

In August of 2011, Plaintiff again discovered that his estranged wife was in contact with Defendant Felter. *See id.* at ¶ 24. Plaintiff claims that he "learned that was why he was reassigned with little travel and reduced travel compensation by Ms. Felter who had breached [his] right to privacy by discussing his personal marital affairs with [his] wife, and by volunteering false and harmful information about [him] to [his] wife." *See id.* Plaintiff alleges that these communications were in violation of his right to privacy, retaliatory, and created a hostile work environment. *See id.* at ¶ 25.

On November 15, 2011, Plaintiff filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See id.* at ¶ 26. On December 26, 2011, Plaintiff received a Dismissal and Notice of Rights, which found that the "facts alleged in the charge failed to state a claim under any of the statutes enforced by the EEOC." *See id.*; *see also* Dkt. No. 9-3.

In his complaint, Plaintiff asserts the following causes of action: (1) discrimination in violation of Title VII of the Civil Rights Act ("Title VII"); (2) retaliation in violation of Title VII; (3) hostile work environment in violation of Title VII; (4) breach of privacy; (5) violations of his right to free speech; (6) violation of the Equal Pay Act; and (7) deprivation of property without due process. *See* Dkt. No. 6 at ¶¶ 30-36.[2]

## III. DISCUSSION

### A.  Standard of review

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court

---

[2] Although the amended complaint contains eight causes of action, the eighth cause of action appears to be nothing more than a duplicate of the seventh.

"may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief.""" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct.

1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

"The *Iqbal* plausibility standard applies in conjunction with employment discrimination

pleading standards." *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909, 2009 WL 3003244,

*3 (S.D.N.Y. Sept. 18, 2009). Employment discrimination claims need not contain specific facts

establishing a *prima facie* case of discrimination, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

514-15 (2002); rather, an employment discrimination complaint "must include only a short and

plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim

is and the grounds upon which it rests," *id.* at 512 (quotation marks and citations omitted); *see

also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (applying *Swierkiewicz* to NYSHRL

discrimination claims).

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se*

parties continue to be accorded more deference than those filed by attorneys. *See Erickson v.

Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must

continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that

[it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.      Plaintiff's Title VII claims against the individual Defendants**

Defendants assert that the Court should dismiss the Title VII claims against the individual Defendants because Title VII claims may only be brought against an employing entity. *See* Dkt. No. 9-1 at 7.[3]

The Second Circuit has repeatedly held that Title VII does not provide for individual liability. *See Sheffield v. Sheriff of Rockland County Sheriff Dept.*, 393 Fed. Appx. 808, 811 n.2 (2d Cir. 2010) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)); *Kercado-Clymer v. City of Amsterdam*, 370 Fed. Appx. 238, 242 n.1 (citations omitted). As such, the Court grants Defendants' motion to dismiss the Title VII claims against Defendants Gonzalez-Sanchez, Lawler and Felter.

## C.    Title VII discrimination

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting approach set forth in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). In order to plead a plausible claim of Title VII discrimination, the plaintiff must allege that (1) he is a member of a protected class; (2) he is qualified for a disputed employment position; (3) he suffered an adverse employment action; and

---

[3] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

(4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted).

The Supreme Court has made clear, however, that *McDonnell–Douglas* sets forth "an evidentiary standard, not a pleading requirement," and that an "employment discrimination plaintiff need not plead a prima facie case of discrimination[.]"  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510, 515 (2002).  Rather, as long as the complaint gives the defendant "fair notice of [the plaintiff's] claim and the grounds upon which it rests," and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," the complaint satisfies the strictures of Federal Rule of Civil Procedure 8(a).  *Boykin v. KeyCorp*, 521 F.3d 202, 214–16 (2d Cir. 2008).

### 1. Member of a protected class

Defendants argue that Plaintiff does not allege that he has experienced any adverse treatment due to race, color, religion, sex or national origin.  *See* Dkt. No. 9-1 at 7.  Rather, Defendants claim that Plaintiff has only alleged that he has experienced discrimination due to his "creed," which is "his campaign of advocacy and demonstrations against the Roman Catholic Church."  *See id.*  Defendants argue that "Congress did not write 'advocacy against a religious institution' into its list of Title VII categories."  *See id.* at 8.

Embracing several earlier district court opinions regarding Title VII's breadth, *e.g., Whitney v. Greater N.Y. Corp. of Seventh–Day Adventists*, 401 F. Supp. 1363 (S.D.N.Y. 1975), the Second Circuit in *Holcomb v. Iona College*, 521 F.3d 130 (2d Cir. 2008), held that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race."  *Id.* at 138.  In *Holcomb*, a Caucasian plaintiff brought

suit against his former employer, Iona College, arguing that it terminated his employment because of his marriage to an African American woman. *See id.* at 131-32. Although Title VII "prohibits discriminatory action against an individual 'because of such individual's race,'" the Circuit held that the plaintiff's assertion was sufficient for a *prima facie* showing of race discrimination. *See id.* at 139 (quoting 42 U.S.C. § 2000e–2(a)) (emphasis in original). "The reason is simple: where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's own race." *Id.* Since *Holcomb*, courts in this Circuit have held that several interracial associations besides marriage can establish a *prima facie* case for intentional discrimination. *See LaGrassa v. Autoone Ins. Co.*, Civ. No. 07–1072, 2008 WL 3887606, *6 (E.D.N.Y. Aug. 20, 2008); *Parker v. AECOM USA, Inc.*, No. 3:09–cv–1078, 2010 WL 625417, *1-*2 (D. Conn. Feb. 17, 2010).

Expanding on the principles set forth in *Holcomb*, courts have found that a person's advocacy on behalf of a protected group alone is sufficient to support a Title VII claim based on association. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511-14 (6th Cir. 2009).

In his amended complaint, Plaintiff does not provide much detail regarding his advocacy and conduct that forms the basis of his claims. In his fifth cause of action, however, Plaintiff describes SNAP's purpose and a little insight into their activities. *See* Dkt. No. 6 at ¶ 34. Specifically, he provides that "SNAP is a nation wide support group comprised of survivors of childhood sexual abuse who were traumatized by clergy and other persons in a position of power over children. The groups provide support meetings for adult survivors as well as advocate and speak out publicly in support of victims of childhood sexual abuse." *See id.* Further, Plaintiff claims that Defendants' actions were brought about because "of his religion and his creed as well

as for public statements against the Roman Catholic Church and their handling of sexual abuse charges involving children and survivors." *See id.* at ¶ 30.

As Defendants correctly contend, Plaintiff's amended complaint fails to satisfy this element of his Title VII discrimination claim. As discussed, although a plaintiff can support a Title VII claim through his or her association with a protected class and advocacy on behalf of that class, Plaintiff has not alleged such a claim. The group with which he is associated, SNAP, "advocate[s] and speak[s] out publicly in support of victims of childhood sexual abuse." Although he does speak out against the Roman Catholic Church and the way in which it has handled sexual abuse cases by the clergy, advocating against an organization does not make him associated with that organization for Title VII purposes.

Based on the foregoing, the Court grants Defendants' motion to dismiss Plaintiff's Title VII discrimination claim.

### 2. Adverse employment action

Defendants also contend that Plaintiff fails to satisfy this element because he remains employed at OASAS, he has not been demoted in terms of title, responsibilities or pay. *See* Dkt. No. 9-1 at 9. Defendants claim that although his work travel has been reduced, "the tangible consequence of this change are a decrease in his ability to incur travel expenses and an increase in the proportion of time spent in his office," which is not a materially adverse change in the terms of his employment. *See id.*

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)) (emphasis

omitted). "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Sanders*, 361 F.3d at 755 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). Examples include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha*, 548 F.3d at 78 (citing *Sanders*, 361 F.3d at 755).

"District courts within the Second Circuit have often found . . . 'that reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.'" *Abraham v. Potter*, 494 F. Supp. 2d 141, 147–48 (D. Conn. 2007) (quoting *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002)). Consequently, the issuance of a "counseling memorandum" and a "notice of discipline," without any further evidence regarding a materially adverse effect thereof, is not an adverse employment action as a matter of law. *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001), *abrogated on other grounds by*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-14, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *see also Sanders*, 361 F.3d at 756 (citing *Weeks*, 273 F.3d at 86) (holding that a negative performance evaluation, on its own, is insufficient to constitute an adverse employment action as a matter of law). Furthermore, interrogations alone are insufficient as a matter of law to establish an adverse employment action. *See Shanahan v. New York*, No. 10–Civ.–0742, 2011 WL 223202, *10 (S.D.N.Y. Jan. 24, 2011) (citing *Eugenio v. Walder*, No. 06–Civ.–4928, 2009 WL 1904526, *10-*11 (S.D.N.Y. July 2, 2009)).

In the present matter, Plaintiff has failed to allege facts sufficient to satisfy this element. Plaintiff has alleged that Defendants forced him to submit travel itineraries ten days in advance

for approval, which occasionally had to be changed and resubmitted, and to call the office to verify his location when engaged in field work. *See* Dkt. No. 6 at ¶¶ 12, 15. Further, Plaintiff claims that Defendants reassigned of some of his workload which rendered it unnecessary for him to travel for work and made it so that he would no longer receive reimbursement for travel expenses. *See id.* at ¶ 20. Further, Plaintiff alleges that he was informed that he was targeted for layoff and that "memorandum" was placed in his file regarding an issue with leave accruals. *See id.* at ¶¶ 22-23.

As Defendants correctly contend, Plaintiff has failed to allege that he suffered an adverse employment action sufficient to support this claim. Plaintiff has simply alleged several isolated incidents which, even taken as a whole, do not constitute an adverse employment action for purposes of Title VII. *See Taylor v. Mills*, ___ F. Supp. 2d ___, 2012 WL 4336236, *17-*19 (D.D.C. Sept. 24, 2012); *see also Abraham*, 494 F. Supp. 2d at 147–48 (quotation omitted). As such, the Court grants Defendants' motion to dismiss Plaintiff's Title VII discrimination claim on this alternative ground.


**D.    Retaliation**

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). Courts analyze claims of retaliation pursuant to Title VII according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (citation omitted).

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find "'(1) that he engaged in protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action.'" *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation and other citations omitted).

### 1. Protected participation or opposition

Presumably, Plaintiff's alleged "protected activity" is the "internal discrimination" complaint he filed alleging that he has been improperly passed over for promotions. *See* Dkt. No. 6 at ¶ 11. Although Plaintiff does not expressly provide the allegations contained in this internal discrimination complaint, it is clear that he was alleging that he was passed over in retaliation for his advocacy in opposition to the Roman Catholic Church's handling of sexual abuse cases and in support of sexual abuse victims. Moreover, a second possible "protected activity" occurred on April 6, 2011 when he reported to Defendant OASAS' Affirmative Action manager and Human Resources that Defendant Felter subjected him "to harassment and public ridicule" in front of co-workers. *See id.* at ¶ 14.

Although Plaintiff may have felt that he was the subject of retaliation, the amended complaint makes clear that Plaintiff did not have a reasonable belief that he was opposing an employment practice made unlawful by Title VII when he filed his complaint regarding Defendant Felter's alleged harassment and ridicule. *See McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001) (citation omitted). As will be discussed below, at best, Plaintiff is

merely attempting to allege that he was retaliated against in violation of the First Amendment. Even though Plaintiff may believe that Defendants' actions were wrongful or even spiteful, the courts have repeatedly emphasized that "Title VII is not a general 'bad acts' statute." *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (quotation and other citation omitted); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (holding that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination" (quotation and other citation omitted)); *see also Montanile v. National Broadcast Co.*, 211 F. Supp. 2d 481, 488 (S.D.N.Y. 2002) (holding that "[c]omplaints regarding violation of employer policies unrelated to impermissible discrimination do not fall within the scope of Title VII, and, therefore, do not qualify for protection under the statute").

Based on the foregoing, the Court finds that Plaintiff has failed to plausibly allege that he engaged in protected participation or opposition for purposes of his Title VII retaliation claim.

### 2. Adverse action

As the Second Circuit described in *Hicks v. Baines*, the Supreme Court now recognizes that "Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous'; anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). In a Title VII retaliation claim, an adverse employment action is one that is "materially adverse to a reasonable employee or job applicant." *Id.* (quoting *White*, 548 U.S. at 57, 126 S. Ct. 2405) (internal quotation marks omitted). "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or

supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 57, 126 S. Ct. 2405). Although Title VII "does not set forth a general civility code for the American workplace," *id.* (quoting White, 548 U.S. at 68-69, 126 S. Ct. 2405), "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id.* (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

"'[P]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." *Id.* (quotation omitted). "Thus, '[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Id.* (quotation omitted).

In the present matter, Plaintiff has not alleged any conduct by Defendants that would dissuade a reasonable worker from making or supporting a charge of discrimination. After the alleged protected opposition occurred, Plaintiff alleges the following instances of retaliation occurred: (1) he was required to call into the office when he was working outside the office to inform them of his whereabouts; (2) Defendant Felter began communicating with his estranged wife and "continued the campaign of harassment at work;" (3) Defendant Felter reassigned certain assignments away from Plaintiff which made it no longer necessary for him to travel for work, yet did not decrease his pay or position; (4) he was informed that he may be laid off because of budgetary constraints; and (5) he had a memorandum placed in his file regarding an issue with his leave accruals. Although Plaintiff may be able to sufficiently allege that this conduct, either separately or in the aggregate, constituted adverse employment actions for purposes of Title VII retaliation, the amended complaint fails to do so. Plaintiff provides only vague and conclusory allegations that Defendant Felter engaged in a "campaign of harassment at work," yet provides no

details regarding her alleged behavior. Moreover, he claims that a "memorandum" was placed in his file, but fails to provides details about this memorandum or why it was allegedly issued. *See Hicks*, 593 F.3d at 168.

Based on the foregoing, the Court finds that Plaintiff failed to plausibly allege that Defendants' took adverse action against him for purposes of Title VII retaliation; and, therefore, the Court grants Defendants' motion to dismiss this claim on this alternative ground.

**E.      Plaintiff's Title VII hostile work environment claim**

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex,'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of another characteristic protected by Title VII, s*ee Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

In the present matter, Plaintiff has failed to allege that Defendants' conduct was sufficiently severe to create an environment that a reasonable person would find hostile or that the environment was created because of a characteristic protected by Title VII. As discussed above, Plaintiff has mentioned that Defendant Felter engaged in a "campaign of harassment at work," but fails to provide any details as to what this "campaign" entailed. Further, Plaintiff has alleged several incidents that he perceives as being adverse employment actions taken by Defendants, but these isolated incidents, which resulted in limited, if any, impact on his career, did not create an

environment that a reasonable person would find hostile or abusive. *See Diggs v. Town of Manchester*, 303 F. Supp. 2d 163, 179-81 (D. Conn. 2004). Finally, Plaintiff alleges that this environment was created because Defendants' dislike of his advocacy on behalf of sexual abuse victims and against the Roman Catholic Church's handling of sexual abuse cases. As discussed above, however, this conduct is not a characteristic protected by Title VII and, therefore, does not support his claim of hostile work environment in violation of Title VII.

Based on the foregoing, the Court grants Defendants' motion to dismiss Plaintiff's Title VII hostile work environment claim.

## F.     First Amendment retaliation[4]

In order to state a *prima facie* case of First Amendment retaliation under § 1983, a plaintiff must allege that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him." *Brunell v. Clinton County, N.Y.*, 334 Fed. Appx. 367, 367 (2d Cir. 2009) (citation omitted). A government employee's speech is constitutionally protected if the employee is speaking in his capacity as a citizen on a matter of public concern. *See Weintraub v. Bd. of Educ. of the City School Dist. of the City of N.Y.*, 593 F.3d 196, 200-201 (2d Cir. 2010) (citations and quotations omitted). An employee is not speaking in his capacity as a citizen for purposes of the First Amendment if he is acting pursuant to his official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

---

[4] Although Plaintiff does not make reference to 42 U.S.C. § 1983 in his amended complaint, he does allege that his right to "Free Speech" was violated in his fifth cause of action. *See* Dkt. No. 6 at ¶ 34. Since 42 U.S.C. § 1983 is the statutory vehicle by which Plaintiff would raise this constitutional claim, and in light of the special solicitude afforded to *pro se* litigants, the Court has construed his amended complaint as bringing claims pursuant to 42 U.S.C. § 1983.

### a. Was Plaintiff's speech constitutionally protected

In determining whether a plaintiff's speech was constitutionally protected, the court must determine "whether [he] spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citation omitted). This requires two separate determinations: "(1) that the employee speak as a citizen, and (2) that the employee speak on a matter of public concern." *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 291 (E.D.N.Y. 2009) (citing *Sousa*, 578 F.3d at 170). "If either of these requirements is not met, then plaintiff's First Amendment retaliation claim must fail as a matter of law." *Id.*

As the Supreme Court has explained, conducting the inquiry into whether speech is made "as a citizen" has sometimes proved difficult because of the enormous variety of factual situations that may arise in such cases. *See Garcetti*, 547 U.S. at 418 (quotation omitted). The inquiry is a "practical one," for which the Supreme Court has not articulated a comprehensive framework to define whether speech is in the course of an employee's duties. *See id.* at 424. Indeed, because the inquiry is fact-bound, courts sometimes defer resolution of this question because the record is not sufficiently developed or disputes of fact exist precluding resolution of this question as a matter of law. *See, e.g., Smith v. New York City Dep't of Educ.*, No. 09-cv-9256, 2011 WL 5118797, *7 (S.D.N.Y. Oct. 28, 2011) (explaining that "[a]ny reliable conclusion would require evidence of precisely what was said and to whom it was communicated"); *Caraccilo v. Vill. of Seneca Falls*, 582 F. Supp. 2d 390, 407 (W.D.N.Y. 2008). Nevertheless, the Second Circuit has recognized that the question of "[w]hether the employee spoke solely as an employee and not as a citizen is . . . largely a question of law for the court." *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011).

A number of principles have emerged that guide this Court's inquiry. The Supreme Court has noted that the test it has announced is guided by the overarching objectives at issue in its jurisprudence in this area. *See Garcetti*, 547 U.S. at 418-19. Weighing on the side of more limited First Amendment protection, the Court has noted that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services," and that the First Amendment does not entitle public employees to "constitutionalize the employee grievance." *Id.* at 418, 420 (citation omitted). At the same time, however, "a citizen who works for the government is nonetheless a citizen," and the government's authority to limit citizen speech is necessarily limited by the First Amendment. *See id.* at 419 (citation omitted). Moreover, the public has an interest "in receiving the well-informed views of government employees engaging in civic discussion," further counseling against overly restrictive limitations on public employees' First Amendment rights. *See id.*

With these principles in mind, *Garcetti* articulated a number of factors for courts to consider in resolving this question. For instance, *Garcetti* explained that it is not dispositive that the speech at issue concerned the subject matter of the plaintiffs' employment because the First Amendment protects some expressions related to the speaker's job. *See id.* at 421 (citations omitted). Speech that "owes its existence" to the employee's responsibilities, however, is not speech as a citizen for First Amendment purposes. *Id.* at 421-22. The *Garcetti* decision distinguished, for example, such speech from public statements outside the course of the employee's duties, including writing a letter to a local newspaper or discussing politics with a co-worker, noting that these activities are "the kind of activity engaged in by citizens who do not work for the government." *Id.* at 423-24 (citations omitted). In assessing this key consideration,

the Supreme Court emphasized that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424-25; *see also Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 203 (2d Cir. 2010) (holding that, "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer").

Courts considering this question in the wake *Garcetti* have also suggested considerations that help define whether an instance of speech is made pursuant to an employee's duties or as a citizen. In *Weintraub*, the Second Circuit affirmed a district court's determination that a teacher who filed a union grievance and complained to an assistant principal about the assistant principal's failure to discipline a student who was throwing books at him was not engaged in speech as a citizen. *See Weintraub*, 593 F.3d at 205. In particular, the Court of Appeals concluded that the plaintiff's grievance was pursuant to his official duties under *Garcetti* "because it was 'part-and-parcel of his concerns' about his ability to 'properly execute his duties' . . . as a public school teacher – namely to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." *Id.* at 203 (quotation and internal citation omitted). This conclusion was reinforced by the Court of Appeal's determination that the plaintiff's speech took the form of an employee grievance, for which there is no relevant civilian analogue, unlike submitting a letter to a newspaper or discussions of politics with a coworker. *See id.* at 203-04 (citations omitted).

In the present matter, there is no question that Plaintiff's advocacy in support of victims of sexual abuse and against practices of the Roman Catholic Church was speech as a private citizen on a matter of public concern. The internal complaints he filed with Human Resources and the Affirmative Action manager, however, are not constitutionally protected speech. Plaintiff was simply complaining about what he perceived to be unfair hiring/promoting practices, unfair timekeeping requirements, and general hostility towards him by Defendant Felter. In filing these complaints, Plaintiff was clearly speaking as an employee regarding matters that were simply personal to him. *See Adams v. New York State Educ. Dep't*, 705 F. Supp. 2d 298, 302-03 (S.D.N.Y. 2010) (holding that the plaintiffs' "First Amendment retaliation claims are deficient because in each case the incidents upon which Plaintiffs base their pleadings concerned personal grievances expressed as employees generally relating to their official duties, work schedules, working conditions, or employer administrative policies and internal operations, rather than to any matters of public concern raised by Plaintiffs as private citizens") (citing *Weintraub v. Board of Educ.*, 593 F.3d 196, 201 (2d Cir. 2010)).

### b. Adverse action

"In the context of a First Amendment retaliation claim . . . retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quotation marks omitted); *see also Nixon v. Blumenthal*, 409 Fed. Appx. 391, 392 (2d Cir. 2010) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Frisenda v. Inc. Village of Malverne*, 775 F. Supp. 2d 486, 510 (E.D.N.Y.

2011) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). "However, 'lesser actions may also be considered adverse employment actions.'" *Id.*; *see also Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass" (citing *Bernheim v. Litt*, 79 F.3d 318, 324-25 (2d Cir. 1996)).

In the present matter, Plaintiff has plausibly alleged that Defendants took retaliatory conduct against him for his protected activities. He claims that, among other things, he was passed over for promotion, reassigned to less desirable cases, had a memorandum placed in his file, and was subjected to oversight that other employees were exempted from. At this stage, these allegations are sufficient to allege plausible adverse actions.

### c. Causation

It is well settled that proof of causation may be shown indirectly by, among other things, demonstrating that the protected activity was followed closely by a retaliatory action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) (other citation omitted); *see also Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Further, the cases demonstrate that the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). The relevance of temporal proximity in a particular First Amendment retaliation case turns on its unique facts and circumstances. *See Smith v. Da Ros*,

No. 09 Civ. 458(MRK), 2011 WL 839374, *13 (D. Conn. Feb. 25, 2011) (citing *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005)).

In the present matter, although Plaintiff has plausibly alleged that, at some point, he engaged in constitutionally protected speech through his activities with SNAP, he has failed to allege a plausible causal connection between his speech and the alleged retaliatory conduct. Specifically, Plaintiff does not allege when he engaged in this speech or where it occurred. Therefore, it is impossible to determine whether the alleged conduct occurred within close enough temporal proximity for this claim to be plausible. Further, it is unclear from the amended complaint whether or how any Defendants became aware of Plaintiff's advocacy activities.[5]

Based on the foregoing, the Court finds that Plaintiff has failed to allege sufficient facts to plausibly demonstrate that his protected speech is causally linked to any of the alleged adverse actions taken by Defendants. Therefore, the Court grants Defendants' motion to dismiss this claim. In light of Plaintiff's *pro se* status and because the Court is not able to determine whether amended of this claim would be futile, the Court will grant Plaintiff one final opportunity to amend his complaint as to this claim.

---

[5] The Court notes that, in Plaintiff's memorandum of law in opposition to Defendants' motion, he states that, "[f]rom 2005-2007, the plaintiff led protests outside of the Holy Cross Church in Albany NY and other churches on a weekly basis and observed on a weekly basis, an obviously infuriated Michael Lawler, OASAS Associate Commissioner who attended this parish." *See* Dkt. No. 12-2 at 4. First, Plaintiff may not amend his complaint through his opposition to a motion to dismiss and the Court is constrained in determining whether a claim's plausibility by what is contained on the face of the complaint. Second, although this type of specific information is what is necessary for Plaintiff to plead a plausible First Amendment retaliation claim, this specific conduct would likely be too temporally remote because the allegedly retaliatory conduct occurred approximately four years after the alleged speech. Although these facts may not be considered in deciding this motion to dismiss, the Court is simply noting for Plaintiff the specificity required should he decide to file a second amended complaint as to this claim.

## G.        Breach of privacy

Plaintiff's fourth cause of action seeks damages for breach of privacy, based upon his allegation that his estranged wife maintained contact with Defendant Felter.

It is well settled that there is no common law breach of privacy claim in New York. *See Matthews v. Malkus*, 377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005) (citing *Messenger v. Gruner and Jahr Printing and Publishing*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 727 N.E.2d 549 (2000)) (other citation omitted).  Moreover, although there is a limited statutory right of privacy, it "only covers the use of one's 'name, portrait, picture, or voice . . . for advertising purposes or for the purposes of trade without the written consent first obtained.'" *Id.* (citation omitted).

Since Plaintiff does not allege that his name, voice, or likeness was used by Defendants for any type of advertising or trade purpose, the Court grants Defendants' motion to dismiss this cause of action.


## H.        Equal Pay Act

Plaintiff's sixth cause of action alleges that Defendants violated the Equal Pay Act by failing to promote him, requiring him to train newly appointed individuals who received higher pay, and by requiring their employees to work "outside of their respective roles as project managers." *See* Dkt. No. 6 at ¶ 35.

The Equal Pay Act prohibits gender-based wage discrimination. *See* 29 U.S.C. 206(d). Plaintiff has not alleged that he is paid less than female employees who hold jobs that require equal skill, effort, and responsibility, and that such jobs are performed under similar working conditions. *See Mezu v. Morgan State University*, 264 F. Supp. 2d 292, 296-97 (quotation

omitted).  As such, the Court grants Defendants' motion to dismiss Plaintiff's Equal Pay Act claim.

## I.     Due Process

In his seventh and eighth causes of action, Plaintiff claims that Defendants' violated his due process rights.  *See* Dkt. No. 6 at ¶¶ 36-37.  Specifically, Plaintiff claims that Defendants violated these rights by reassigning his workload, which eliminated his opportunity to receive reimbursement for travel expenses.  *See id.* at ¶ 36.  Plaintiff claims that this was done "for personal and vindictive reasons because Plaintiff filed a Time Keeping Contract grievance with the agency for directives issued by Defendant Felter that were in direct violation of the PEF Contract."  *See id.*

In order to prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process."  *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)).  "Property rights arise from '"an independent source such as state law," [with] federal constitutional law determin[ing] whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'"  *Pichen v. City of Auburn, N.Y.*, 728 F. Supp. 2d 192, 198 (N.D.N.Y. 2010) (quotation and other citation omitted).  The essential principle of procedural due process is that a deprivation of life, liberty or property should be preceded by notice and an opportunity for a hearing appropriate to the nature of the case.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).  However, "[w]here there is a meaningful postdeprivation remedy, there is no

due process violation."  *Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir. 1998) (citation omitted).

In the present matter, Plaintiff has failed to allege that he had a protected property interest in continued receipt of travel reimbursement or that he had a property interest in continuing to be assigned work which would require him to travel and thereby be eligible for travel reimbursement.  Moreover, as Defendants correctly point out, it is clear from the allegations in the amended complaint that Plaintiff's "due process" claims are simply reiterating his retaliation and discrimination claims.

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's due process claims.

## J.    Eleventh Amendment

Defendants contend that any claims brought pursuant to 42 U.S.C. § 1983 against Defendant OASAS and Defendants Gonzalez-Sanchez, Lawler and Felter in their official capacities must be dismissed because of Eleventh Amendment immunity.  *See* Dkt. No. 9-1 at 16-17.

The Eleventh Amendment provides a state with sovereign immunity from suit.  *See Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation omitted).  "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  *Id.* at 1638 (citation omitted).  Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)

(holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities) (citation omitted).

To the extent that Plaintiffs' amended complaint seeks monetary relief and/or non-prospective injunctive relief against the individual Defendants in their official capacities, and against Defendant OASAS, the Court finds that they are immune from suit pursuant to the Eleventh Amendment; and, therefore, grants this portion of Defendants' motion to dismiss. *See Walker v. Connecticut*, 106 F. Supp. 2d 364, 369 (D. Conn. 2000) ("[I]n an action under 42 U.S.C. § 1983 'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include any award of damages which requires payment of funds from the State Treasury'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)).

### K.     Qualified immunity

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone*

*v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Second Circuit has made clear that it disfavors granting qualified immunity at the motion to dismiss stage. *See McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983) (noting that generally "the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted").

Since the Court has granted Defendants' motion as to all of Plaintiff's constitutional claims, the Court declines to determine whether Defendants are, in the alternative, entitled to qualified immunity.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint is **GRANTED**; and the Court further

**ORDERS** that, with the exception of Plaintiff's First Amendment retaliation claim, all of the claims in the amended complaint are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff may file a second amended complaint as to his First Amendment retaliation claim within **THIRTY (30) DAYS** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that, if Plaintiff fails to file a second amended complaint as to his First Amendment retaliation claim within **THIRTY (30) DAYS** of the date of this Memorandum-Decision and Order, this action will be dismissed and judgment entered in Defendants' favor without further order of this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 26, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge