**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MARK EDWARD LYMAN,**

                      **Plaintiff,**

vs.                                     **1:12-CV-530
                                             (MAD/RFT)**

**NYS OASAS; ARLENE GONZALEZ-SANCHEZ;
MICHAEL LAWLER; and LAURIE FELTER,**

                      **Defendants.**

_____

**APPEARANCES:**                             **OF COUNSEL:**

**MARK EDWARD LYMAN**
P.O. Box 3924
Albany, New York 12203
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**           **CHARLES J. QUACKENBUSH, AAG**.
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 23, 2012, Plaintiff commenced this action alleging that Defendants violated his rights under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. *See* Dkt. No. 1. On May 22, 2012, Plaintiff amended his complaint. *See* Dkt. No. 6. In response to the amended complaint, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 9. The Court granted Defendants' motion to dismiss the amended complaint and ordered that, with the exception of Plaintiff's First Amendment retaliation claim, all of the claims in the amended complaint be dismissed with

prejudice. *See* Dkt. No. 14.

On March 18, 2013, Plaintiff again amended his complaint as to his First Amendment retaliation claim. *See* Dkt. No. 18. Currently before the Court is Defendants' motion for judgement on the pleadings seeking dismissal of the second amended complaint with prejudice. *See* Dkt. No. 28.

## II. BACKGROUND

Plaintiff is an employee of the New York State Office of Alcoholism and Substance Abuse Services ("OASAS"). *See* Dkt. No. 6 at ¶ 8. Plaintiff works in the Albany County Capital Bureau with the Facilities Evaluation and Inspection Unit ("FEIU"). *See id.* at ¶¶ 8, 12.

For eight years Plaintiff has been the Upstate Coordinator for the Survivors Network of those Abused by Priests ("SNAP"). *See* Dkt. No. 18 at ¶ 13. Plaintiff has organized support meetings through SNAP to assist victims of predatory priests and has spoken out publicly on over 100 occasions. *See id.* at ¶¶ 9, 13. According to Plaintiff, his speech advocating against predatory priests has caused Defendant OASAS and the above-named Defendants to harass him because of their religious and business connections with the Roman Catholic Church. *See id.* ¶ 57(b). Specifically, on June 25, 2010, Plaintiff protested in Buffalo, New York demanding the diocese remove an alleged pedophile priest. *See* Dkt. No. 18-1 at 16. Plaintiff made comments to the WIVB news station regarding the protest and the goals of SNAP. *See id.* Thereafter, Plaintiff alleges that, in August and September of 2010, he was audited and then questioned about his travel practices for work. *See* Dkt. No. 18 at ¶¶ 20, 21, 27. Defendant OASAS issued a Formal Counseling Letter (memorandum) to Plaintiff regarding his travel and mandated that he seek prior approval of his travel itinerary. *See id.* at ¶¶ 24, 27. According to Plaintiff, this was not the

standard practice of review by the agency. *See id.* at ¶ 28.

Further, in November 2010, Plaintiff interviewed for an open position in OASAS, but he learned on January 15, 2011 that he did not receive it. *See id.* at ¶¶ 30, 32. Plaintiff's speech on June 25, 2010 in Buffalo, New York was the only alleged protected activity in relatively close temporal proximity to the interview (five months before interviewing for the new position and seven months before learning he did not receive this position). *See* Dkt. No. 18-1 at 16.

On March 22, 2011, Plaintiff spoke to the Albany Times Union newspaper about predatory priests in Albany, New York. *See* Dkt. No. 18-1 at 26. On April 25, 2011, he was instructed "to call the office from the last place of business when in the field to verify work location and to notify the office of Plaintiff's whereabouts." *Id.* at ¶ 34. He states this policy did not apply to all bureau or agency employees, and thus violated the PEF contract. *See id.* Further, on June 21, 2011, three months after Plaintiff's speech to the Albany Times Union, Defendant Laurie Felter rearranged Plaintiff's workload and re-assigned him to local travel only. *See* Dkt. No. 18 at ¶ 39. Plaintiff claims that he was told that this was "done to reduce travel expenses[,] however the re-assigned workload is now allocated to employees within the same office who will have to travel to perform these inspections." *Id.* Thereafter, on July 25, 2011, Defendant Felter directed Steve Mantor to issue Plaintiff a memorandum on Leave Accruals and Attendance that was placed in Plaintiff's file. *See id.* at ¶¶ 41, 42.

Following these incidents, Plaintiff claims that in October 2012 he was removed from the overtime roster. *See id.* at ¶ 48. In November 2012, Plaintiff filed an "Out of Title" work grievance for receiving compensation that was allegedly not commensurate with his co-workers. *See id.* at ¶ 49. In March 2013, Plaintiff filed a grievance alleging that improper additional review of his travel expenses was being conducted, which caused undue delays in the processing

of his travel reimbursements. *See id.* at ¶ 52. Lastly, in March 2013, he was allegedly confronted by Defendant Felter in an aggressive manner and as a result filed a workplace violence complaint. *See id.* at ¶¶ 53, 54.

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

4

"plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.     First Amendment Retaliation**

In order to state a prima facie case of First Amendment retaliation under § 1983, a plaintiff must allege that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment discrimination against him." *Brunell v. Clinton County, N.Y.*, 334 Fed. Appx. 367, 370 (2d Cir. 2009) (citation omitted). In the present matter, Defendants do not challenge the first two elements. Thus, at issue here is the existence of a causal connection between Plaintiff's speech and the alleged adverse employment actions.

It is well settled that proof of causation may be shown indirectly by, among other things,

5

demonstrating that the protected activity was followed closely by a retaliatory action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) (other citation omitted); *see also Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Further, the cases demonstrate that the Second Circuit "has not drawn a bright line to define outer limits beyond which a temporal relationship is too attenuated to establish a casual relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). The relevance of temporal proximity in a particular First Amendment retaliation case turns on its unique facts and circumstances. *See Smith v. Da Ros*, 777 F. Supp. 2d 340, 357 (D. Conn. 2011) (citing *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.,* 411 F.3d 306, 314 (2d Cir. 2005)).

Upon review of Plaintiff's second amended complaint and additional submissions attached to the pleading, Plaintiff alleges a plausible causal connection between some of his speech and some of the alleged retaliatory conduct.[1] Specifically on June 25, 2010, Plaintiff's comments to the WIVB news station regarding predatory priests in Buffalo, New York occurred less than two months before August 8, 2010, when a Formal Counseling Letter (memorandum) was issued to Plaintiff auditing his travel and mandating that he seek prior approval of his itinerary. The approximate two month period between Plaintiff's speech and the adverse action (placing the memorandum in Plaintiff's file and subjecting him to increased oversight) is sufficient to allege a

---

[1] In his affidavit in opposition to Defendants' motion to dismiss, Plaintiff states that he is seeking to supplement his complaint through the affidavit, which he claims provides "additional temporal proximity with the adverse employment actions taken against me by the defendants." *See* Dkt. No. 32 at ¶ 18. As the Court explained in its February 26, 2013 Memorandum-Decision and Order, Plaintiff may not amend his complaint through his opposition to a motion to dismiss and the Court is constrained in determining a claim's plausibility by what is contained in the complaint and the documents attached thereto. *See* Dkt. No. 14 at 24 n.5.

6

plausible causal connection because of the close temporal proximity.

Further, Plaintiff's March 22, 2011 comments to the Albany Times Union and the April 25, 2011 mandate that Plaintiff check-in with the office regarding his travel, occurred within approximately one month of each other. Similarly, on June 21, 2011, Defendants rearranged Plaintiff's workload and restricted him from traveling to conduct inspections, which occurred within approximately three months from the comments to the Times Union. These periods of one month and three months are not too remote from Plaintiff's speech and thus plausibly establish a casual connection between the speech and adverse action. Additionally, the July 25, 2011 Leave Accruals and Attendance memorandum was placed in Plaintiff's file within four months of Plaintiff's speech to the Albany Times Union newspaper. Even though the speech and the memorandum occurred within an approximate four month period from one another, the increased oversight and the assignment to less desirable cases combined with the approximate four month period, establish a plausible causal connection between the speech and the adverse action.

Although Defendants are correct that Plaintiff failed to specifically identify the dates on which the speech occurred in the body of the complaint, Plaintiff attached to the complaint exhibits providing the relevant dates and content of Plaintiff's protected activity. *See* Dkt. No. 18-1 at 1-59. These exhibits provide sufficient factual detail to establish a plausible causal connection as to the activity discussed above and are properly considered in deciding this motion because they are attached to the pleading. As such, the Court finds that Plaintiff has stated sufficient facts to plausibly demonstrate that his protected speech in 2010 and 2011 is causally linked to the adverse actions of placing the memoranda in his file, subjecting him to extensive oversight, and reassigning him to less desirable cases.

As to the alleged protected activity that occurred between 2005 and 2009, however, the

Court finds that these activities are too remote to establish a plausible causal connection to any of the alleged adverse actions. *See* Dkt. No. 18-1 at 1. As such, the Court grants Defendants' motion as to these allegations.

**C.     Qualified Immunity**

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that [their] alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)). Since determining whether a defendant is entitled to qualified immunity is generally a fact intensive inquiry, the Second Circuit has made clear that it disfavors granting qualified immunity at the motion to dismiss stage. *See McKenna v. Wreight*, 386 F.3d 432, 435 (2d Cir. 2004) (noting that generally "the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted") (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983)).         The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation

8

omitted). The first step requires the court to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callaham*, 555 U.S. 223, 232 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). "As the qualified immunity defense evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In the present matter, as discussed, Plaintiff has adequately pled that Defendants impermissibly retaliated against him in violation of his First Amendment rights. Without the benefit of discovery, it is difficult to evaluate whether qualified immunity is appropriate in this matter, given the factual allegations at issue. While Plaintiff's allegations are sufficient to survive a motion to dismiss, they hardly provide the Court with a sufficient basis to ascertain the precise contours of the right asserted and the objective reasonableness of Defendants' alleged actions. Under these circumstances, the question of qualified immunity is best left to resolution at the summary judgment stage.

**D.  Personal Involvement**

It is well established that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere linkage to the

unlawful conduct under the doctrine of *respondeat superior* is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325-326 (1981); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). The personal involvement of a supervisory official may be shown by evidence that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

In *Ashcroft v. Iqbal*, the Supreme Court held that, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because that "conception of supervisory liability is inconsistent with [the principle that supervisors] may not be held accountable for the misdeeds of their agents." *Id.* at 677. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

In the present matter, the only substantive allegation in the second amended complaint concerning Defendant Lawler provides as follows: "Defendants are aware of unlawful harassment against Plaintiff by his supervisors. Such activity given the capacity of the defendants particularly Mike Lawler – Associate Commissioner and Laurie Felter – Capital Bureau Director represent OASAS and are high ranking members of the organizations proxy." *See* Dkt. No. 18 at ¶ 57(j). With respect to Defendant Gonzalez-Sanchez, the second amended complaint is completely silent.

Plaintiff fails to allege a tangible connection between the alleged unlawful conduct and Defendants Gonzalez-Sanchez and Lawler. Plaintiff merely generally alleges that, as supervisors, they became aware of the adverse activities through the agency and grievance processes. Plaintiff provides no specific details as to how Defendants Gonzalez-Sanchez and Lawler (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created or allowed to continue a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to Plaintiff's rights by failing to act on information indicating that the violation was occurring. As such, the Court finds that Plaintiff has failed to allege that Defendants Gonzalez-Sanchez and Lawler were personally involved in the alleged unconstitutional conduct.

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Defendants Gonzalez-Sanchez and Lawler.

**E.    Eleventh Amendment**

Defendants contend that any claims brought pursuant to 42 U.S.C. § 1983 against

11

Defendant OASAS and Defendants Gonzalez-Sanchez, Lawler and Felter in their official capacities must be dismissed because of Eleventh Amendment immunity. *See* Dkt. No. 28-1 at 15-16.

The Eleventh Amendment provides a state with sovereign immunity from suit. *See Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 1638 (citation omitted). Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities) (citation omitted).

To the extent that Plaintiff's second amended complaint seeks monetary relief and/or non-prospective injunctive relief against the individual Defendants in their official capacities, and against Defendant OASAS, the Court finds that they are immune from suit pursuant to the Eleventh Amendment; and, therefore, grants this portion of Defendants' motion to dismiss. *See Walker v. Connecticut*, 106 F. Supp. 2d 364, 369 (D. Conn. 2000) ("[I]n an action under 42 U.S.C. § 1983 'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include any award of damages which requires payment of funds from the State Treasury'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)).

## IV. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the second amended complaint is **GRANTED in part** and **DENIED in part**;[2] and the Court further

**ORDERS** that Defendants OASAS, Arlene Gonzalez-Sanchez and Michael Lawler are **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: December 10, 2013
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's First Amendment retaliation claim against Defendant Felter.